# In the United States Court of Federal Claims

No. 22-1057

(Filed: March 30, 2023)

| | |
|---|---|
| **CAHABA SAFEGUARD ADMINISTRATORS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>**and**<br><br>**KARNA, LLC, and GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.,**<br><br>Defendant-intervenors. | Post-award bid protest; challenge to corrective action cancelling a solicitation |

Kevin Paul Connelly, Vedder Price P.C., Washington, D.C. for plaintiff.  With him on the briefs were Of Counsel Kelley E. Buroker, Tamara Droubi, and Jeffrey M. Lowry, Vedder Price P.C., Washington, D.C.

Stephen J. Smith, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Eric. P. Bruskin, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C.  Also with him on the briefs were Corey J. Thompson, Elise Harris, Joshua A. Roman, and Jorge Correa, Assistant Regional Counsel, Office of the Regional Counsel, Region IV, Department of Health and Human Services.  With him at the hearing was Douglas Edelschick.

Craig A. Holman, Arnold & Porter Kaye Scholer, LLP, Washington, D.C. for defendant-intervenor Karna, LLC.  With him on the briefs were Amanda J. Sherwood and Jessica Nejberger, Arnold & Porter Kaye Scholer, LLP, Washington, D.C.

Carla J. Weiss, Jenner & Block LLP, Washington, D.C. for defendant-intervenor General Dynamics Information Technology, Inc. With her on the briefs were Noah B. Bleischer, Nathaniel E. Castellano, Moshe B. Broder and Aime J. Joo, Jenner & Block LLP, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

This case arises from the Center for Disease Control's ("CDC's") decision to take corrective action and cancel a solicitation and award to Cahaba Safeguard Administrators, LLC ("Cahaba"). The CDC issued a solicitation for third-party administrator services for the World Trade Center Health Program. AR 145.[1] After making an award to Cahaba under a solicitation issued December 3, 2021, AR 2781-82, two offerors who did not receive an award, General Dynamics Information Technology ("General Dynamics") and Karna, LLC ("Karna"), filed bid protests with the Government Accountability Office ("GAO"), AR 3258-59, 4155. As a result, CDC announced that it would take corrective action by canceling the solicitation and award to Cahaba. *See* AR 4489, 4491, 4497. Cahaba filed a protest in this court on August 22, 2022, challenging CDC's decision to take corrective action and asking the court to grant declaratory and injunctive relief. Compl., ECF No. 1. The government agreed to voluntarily stay the corrective action through April 14, 2023. *See* Joint Status Report at 2, ECF No. 41; Hr'g Tr. 16:17-23 (Aug. 25, 2022). Given the stay, CDC entered a bridge contract with Karna, which ends in May 2023 but includes an option to extend for six months; Karna is the current bridge contract holder and the contract incumbent. *See* Hr'g Tr. 11:2 to 12:23, 15:10-15 (August 25, 2022); Def.-Intervenor Karna LLC's Mem. Of Law in Opp'n to Pl.'s Mot. for J. on the Administrative R. and Cross-Mot. for J. on the Administrative R. ("Karna's Cross-Mot.") at 9, ECF No. 53-1.

The court held an initial status conference on August 25, 2022, at which point the government had requested a remand to CDC. *See* Status Conference Order of August 23, 2022, ECF No. 10; Def.'s Partially Unopposed Mot. for Voluntary Remand ("Def.'s Mot. for Remand"), ECF No. 17.[2] The court granted defendant's motion to remand after the initial status conference. *See* Order of August 25, 2022 ("Remand Order"), ECF No. 19. CDC thereafter issued a reconsideration memorandum on November 30, 2022, advising that it had decided to cancel the solicitation, terminate the award to Cahaba, and issue a new solicitation. Recons. Mem. at 1, ECF No. 39. Cahaba then amended its complaint to include challenges to CDC's

---

[1] The administrative record is paginated consecutively and will be cited as "AR __."

[2] CDC initially announced that it would take corrective action by canceling the award and issuing a new solicitation, but it never took such action. Instead, it asked to reconsider its decision to take corrective action on remand and agreed to a voluntary stay until April 14, 2023. Hr'g Tr. 13:20-25 (Aug. 25, 2022); Joint Status Report at 2. CDC has not yet taken corrective action as of the date of the entry of this opinion.

findings and conclusions in its reconsideration memorandum.  *See* First Am. Compl. ("Am. Compl."), ECF No. 43.

At issue in this bid protest are 1) whether CDC's decision to take corrective action in its reconsideration memorandum was a new decision, 2) whether the reconsideration memorandum included a rational basis to take corrective action and whether it violated regulation or procedure, and 3) whether CDC's decisions to cancel the solicitation, terminate the award to Cahaba, and issue a new solicitation were reasonable.  *See* Pl.'s Mot. for J. on the Administrative R. ("Pl.'s Mot.") at 1-2, ECF No. 49.  Briefing has been completed, and a hearing was held on March 22, 2023.

## FACTS[3]

Plaintiff submitted an offer to CDC's solicitation no. 75D301-22-Q-74251 for third-party administrator services for the World Trade Center Health Program.  The program provides benefits to treat certain health conditions experienced by first responders to the September 11, 2001 terrorist attacks and survivors of New York City sites.  *See* AR 145; Am. Compl. ¶ 11.  On December 3, 2021, CDC issued a solicitation for third-party administrators to provide "Contract Management, Member Services, Provider Network Management, Medical Benefit Administration, Claims Processing, and Data and Business Information Management."  *See* AR 130-31, 150; Pl.'s Mot. at 2-3.  The awarded third-party administrator would receive a one-year contract starting on May 1, 2023, with four one-year option periods.  *See* AR 184.

### A. Solicitation and evaluation criteria

The solicitation involved two phases (Phase I and Phase II).  AR 238-39.  Phase I included a technical-capabilities overview and a prior demonstrated experience section.  AR 238-39.  The technical-capabilities overview involved a checklist inquiring about offerors' fundamental capabilities, AR 240, including "existing utilization management platform[s]" for reviews, AR 298.  The technical-capabilities overview also involved a discussion of the offerors' understanding of risk awareness and risk management and a draft contract management plan that, for example, addressed the offerors' management plan for subcontracting services.  AR 238-41.  The prior demonstrated experience section involved a description of the offerors' past work with three relevant references.  *See* AR 238-41.

---

[3] The court's findings of fact are based on the administrative record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now 52.1 of the Rules of the Court of Federal Claims ("RCFC")] from the record evidence as if it were conducting a trial on the record.").

3

After reviewing Phase I proposals, CDC assigned offerors a rating of either high confidence[4] or low confidence,[5] reflecting its view of the offerors' ability to successfully perform the contract requirements. AR 238, 247. CDC also provided an "Advisory Down Select" notice to offerors, which included offerors' assigned rating and a recommendation about whether they should make Phase II submissions. AR 238, 247.

Phase II included a technical-approach oral presentation, an administrative submissions and supporting documentation section, and a pricing proposal. AR 239. A week before the technical-approach oral presentations, which were conducted via Microsoft Teams, offerors sent their PowerPoint presentations to CDC. *See* AR 1360, 1363-1484, 1770-1826, 2099-2186, 2542-91, 4590. The technical-approach oral presentation asked offerors to cover four technical-approach factors: 1) demonstration of technical solutions and systems, 2) transition in/out plan, 3) contract management approach, and 4) staffing plan and key personnel. AR 242. For the technical-approach oral presentation, the offerors had two hours to give their prepared presentations. CDC then took an hour to deliberate and prepare questions, after which the offerors participated in a two-hour question and answer session "for further information exchange and clarity about the [o]ral [p]resentation." AR 242. CDC did not record the oral presentations, but evaluators took notes during the presentations. AR 4590. Some of the notes captured proposal requirements that increased or decreased the evaluators' rating of offerors' success, but some of the notes captured only the questions asked, rather than the content of offerors' answers. *See* AR 4590, 4620-23, 4635-37, 4863-65, 4874-75, 4882, 4885-87, 4992-93. After the presentations, the evaluators made "on-the-spot" evaluations, which consisted of confidence ratings for each technical-approach factor and an overall confidence rating for the technical-approach oral presentation. *See* AR 2728, 2736, 2744, 2751, 4861-5096. The administrative submissions and supporting documents included past performance questionnaires, resumes of key personnel, and disclosures from partners, subcontractors, and consultants. AR 242-43. The pricing proposal asked offerors to complete a Department of Health and Human Services subcontracting plan, a narrative of their price, a pricing proposal spreadsheet (including direct labor, materials and services, subcontracted items, travel, and other direct costs, and indirect costs), and a CDC per-member per-month pricing template for fixed-price. *See* AR 243-44.

As part of Phase II, CDC assigned offerors a rating of high confidence, some confidence,[6] or low confidence for each factor of the technical-approach oral presentation; CDC then assigned offerors a rating of high confidence, some confidence, or low confidence for the

---

[4] High confidence was defined as, "The [g]overnment has high confidence that the [o]fferor understands the requirement, proposes a sound approach, and will be successful in performing the contract with little or no [g]overnment intervention." AR 1332-33.

[5] Low confidence was defined as, "The [g]overnment has low confidence that the [o]fferor understands the requirement, proposes a sound approach, or will be successful in performing the contract even with [g]overnment intervention." AR 1332-33.

[6] Some confidence was defined as, "The [g]overnment has some confidence that the [o]fferor understands the requirement, proposes a sound approach, and will be successful in performing the contract with some [g]overnment intervention." AR 2783.

technical-approach oral presentation as a whole. *See* AR 2776, 3153. The government indicated whether offerors' past performance was acceptable or not acceptable, *see* AR 3153, whether offerors' price proposal was appropriate or not appropriate, *see* AR 2779-80, and whether offerors' pricing proposal and administrative requirements considered together gave the government high confidence, some confidence, or low confidence, *see* AR 3153. After reviewing Phase II proposals as a whole, CDC stated that it would assign an "[a]djectival [c]onfidence [r]ating," reflecting its review of the offeror's ability to successfully perform the contract requirements. *See* AR 247. This rating in turn was high confidence, some confidence, or low confidence. *See* AR 3153. The solicitation stated that "[t]echnical and past performance, when combined, are more important than [p]rice." AR 248. That being said, the government was conscientious of not overpaying. AR 248. "The award decision [was] determined through an assessment comparing the differences in the value of the non-price factors with the differences in the prices proposed. When non-price factor ratings are considered technically equal, price . . . then [became] the significant factor." AR 248.

### B. Offerors and evaluation

Five offerors submitted Phase I proposals, which CDC evaluated on February 1, 2022. *See* AR 1332-33. Four offerors, Cahaba, General Dynamics, Karna, and Sedgwick Public Sector ("SPS"), were assigned a high confidence rating for Phase I and therefore were advised to submit Phase II proposals. *See* AR 1333, 1355, 2776. For Phase II, Cahaba was the only offeror that was assigned an overall high confidence rating. AR 3153. In addition, Cahaba and General Dynamics were the only two offerors that received a high confidence rating for the technical-approach oral presentation; Karna and SPS were assigned some confidence. AR 2776. Although both Cahaba and General Dynamics were given an overall confidence rating for the technical-approach oral presentation, CDC assigned General Dynamics some confidence for two of the Phase II technical-approach factors, namely its transition in/out plan and its contract management approach, while it assigned Cahaba high confidence for each factor. AR 2776.

In addition, CDC deemed Cahaba's pricing to be appropriate and its pricing proposal and administrative requirements were given high confidence while General Dynamics's and SPS's pricing were deemed to be not appropriate, and their pricing proposal and administrative requirements were given low confidence. AR 2779-80, 3153, 3175. Cahaba's total cost was notably higher than the other three Phase II offerors' prices.

| Vendor | Base Period (Transition) | Option Year 1 | Option Year 2 | Option Year 3 | Option Year 4 | Total PMPM Cost (OP1) | Total Cost |
|---|---|---|---|---|---|---|---|
| Cahaba | $9,627,760.36 | $21,933,920.66 | $22,395,132.61 | $22,863,314.02 | $23,174,988.39 | $32.53 | **$99,995,116.04** |
| General Dynamics | $7,715,502.20 | $16,259,948.60 | $15,907,772.00 | $15,542,110.41 | $15,555,692.27 | $26.14 | **$70,981,025.48** |
| SPS | $6,594,342.40 | $16,008,278.20 | $16,449,078.59 | $16,962,351.73 | $17,749,849.84 | $23.50 | **$73,763,900.76** |
| Karna | $9,624,764.87 | $18,488,659.71 | $18,497,510.06 | $19,023,937.27 | $19,338,658.82 | $27.53 | **$84,973,530.72** |

AR 2779.

5

CDC stated that Cahaba's "proposed approach, including labor hours, categories, rates, and other direct costs" were appropriate.  AR 2779.  Cahaba "included labor categories for [human resource] positions that are uncommon but are not inappropriate for this effort."  AR 2779.  It also indicated that Cahaba had "included all tasks for the base period . . . . [and] [t]heir [per-member per-month] pricing [was] deemed appropriate and in line with market research, industry averages[,] and [an independent government cost estimate]."  AR 2779.  Although CDC deemed Karna's pricing to be appropriate and its pricing and proposal and administrative requirements were given high confidence, AR 2780, 3163, it assigned Karna some confidence for its technical-approach oral presentation, AR, 2776, 2779, 3163.[7]  When discussing the best-value recommendation, CDC noted that Cahaba's "proposal is priced the highest out of all offerors.  However, [Cahaba's] total pricing is comparable to both historical costs and [an independent government cost estimate] for this requirement."  AR 2780.

### C.  *Award, protests, and announced corrective action*

The technical-evaluation panel recommended Cahaba receive the award.  AR 2776-77.  Cahaba was notified by CDC that it was selected on May 31, 2022.  AR 2948.  The three other Phase II offerors, Karna, General Dynamics, and SPS, all protested the award; Karna and General Dynamics filed protests with GAO on July 20, 2022, and July 25, 2022, respectively.  AR 3258-59, 4155.  SPS filed a protest with the agency on July 25, 2022.  AR 4423.  The unsuccessful offerors challenged multiple aspects of the award including the oral presentations and the records kept of it, the evaluation of the oral presentations, the evaluation of the pricing proposal and administrative requirements, and the best-value tradeoff.  *See* AR 3258-64, 4155-57, 4423, 4434-45.  CDC announced on August 8, 2022 that it would take corrective action by canceling the award and issuing a new solicitation to make a new award.  *See* AR 4489, 4491.  In its notice of its decision to take corrective action and request for GAO to dismiss the two protests, CDC did not provide any rationale for its decision.  AR 4489, 4491.  It stated, "The [a]gency will cancel the current award, issue a new solicitation for this requirement[,] and make a new award decision."  AR 4489, 4491.  Because of CDC's decision to take corrective action, GAO and CDC dismissed the three protests.  AR 4497-98, 4501.

### D.  *Bid protest of corrective action*

In response to CDC's announcement that it would cancel the solicitation and award, Cahaba filed this bid protest on August 22, 2022.  Compl.  Karna and General Dynamics then intervened as defendant-intervenors.  Order Granting Karna's Mot. to Intervene, ECF No. 13; Order Granting General Dynamics's Mot. to Intervene, ECF No. 16.  The government filed a motion for voluntary remand on August 25, 2022, asking to reconsider its decision to take corrective action.  Def.'s Mot. for Remand.  The court held an initial status conference on August 25, 2022, ECF No. 10, after which the court granted the motion to remand.  *See* Remand Order.[8]

---

[7] All four offerors who advanced to Phase II received an "acceptable" rating for their past performance.  AR 3142, 3153, 3163, 3175.

[8] At that initial conference, the court observed that CDC had issued "almost no reasoning whatsoever for the cancellation of the award and the reinstitution of a procurement effort."  Hr'g Tr. 5:15-17 (Aug. 25, 2022).

During the initial status conference, CDC represented that it would not use the opportunity to reconsider its decision during remand as a *pro forma* exercise to add information and reasons to support its decision to take corrective action to the record.  *See* Hr'g Tr. 6:2-24 (Aug. 25, 2022).  CDC also stated that it agreed to voluntarily stay corrective action and that because of the voluntary stay, it entered a bridge contract that ends on May 2023 but includes an option to extend for six months.  *See* Hr'g Tr. 15:10-15, 16:20-23 (Aug. 25, 2022).  Karna holds the bridge contract.  *See* Hr'g Tr. 12:16-23 (Aug. 25, 2022).

### E.  *Remand to CDC and resulting reconsideration memorandum*

The court remanded to CDC until November 30, 2022.  Remand Order at 1.  The court directed CDC to "(1) reconsider its decision to take corrective action and take any further administrative actions consistent with that reconsideration; [and] (2) be authorized to consider any further information that the agency may gather during the remand in accordance with any procedures the agency may establish for that purpose."  *See* Remand Order at 1-2, RCFC 52.2(b)(1)(A).  On remand, CDC gave offerors a chance "to address 1) whether taking corrective action is necessary and appropriate; and 2) the scope of potential corrective action, by providing a written submission responding to [an] attached list of questions."  *See* AR 4503.  All four offerors made submissions.  Recons. Mem. at 1.

On November 30, 2022, CDC filed a reconsideration memorandum.  *See* Recons. Mem.  In it, CDC represented that "[a]fter conducting a thorough review and evaluation of whether to take corrective action, including consideration of the offerors' respective protest grounds and submissions, the [a]gency . . . determined to undertake corrective action by cancelling the current award to [Cahaba] and pursuing a new contract award by issuing a [s]olicitation in order to ensure the integrity of this essential contract action."  *Id.* at 1.  The memorandum stated that it was "a new decision and supersedes the [a]gency's original decision in this matter."  *Id.*  CDC explained that it decided to take corrective action because of the oral presentations and associated record, the potential application of unstated evaluation criteria, the agency's binary evaluation of offerors' past performance, the price realism analysis, and the professional compensation analysis, as well as concerns that it could not defend against claims in a protest.  *See id.* at 1-4.  The agency pointed to "the depth and breadth of the procurement issues raised by the offerors," including the technical, pricing, and past performance evaluations which could have affected the best-value decision and thereby could have caused them prejudice.  *See id.* at 4.  Given that CDC found persuasive offerors' concerns, it concluded that "the [a]gency believes that cancellation of the award to [Cahaba] and the issuance of a new [s]olicitation open to all interested parties (and to other offerors) which more accurately defines the [a]gency's expectations for proposal submission and clearly states the [a]gency's evaluation criteria is reasonable and appropriate."  *See id.*

### F.  *Motion and cross-motions for judgment on the administrative record*

Cahaba filed its motion for judgment on the administrative record on February 3, 2023.  Pl.'s Mot.  Defendant, the government, and defendant intervenors, Karna and General Dynamics, filed their responses and cross-motions for judgment on the administrative record on February 17, 2023.  Def.'s Opp'n to Pl.'s Mot. for J. upon the Administrative R. and Cross-Mot. for J.

7

upon the Administrative R. ("Def.'s Cross-Mot."), ECF No. 52; Def.-Intervenor's Cross-Mot. for J. on the Administrative R. ("General Dynamics's Cross-Mot."), ECF No. 50; Karna's Cross-Mot. Cahaba filed its reply and response on February 28, 2023. Pl.'s Reply in Supp. of its Mot. for J. on the Administrative R. and Opp'n to Def.'s and Def.-Intervenors' Mots. for J. on the Administrative R. ("Pl.'s Reply"), ECF No. 54. The government and defendant-intervenors filed their replies and response on March 10, 2023. *See* Def.'s Reply in Supp. of its Cross-Mot. for J. upon the Administrative R. ("Def.'s Reply"), ECF No 56; Reply in Supp. of Def.-Intervenor's [General Dynamics's] Cross-Mot. for J. on the Administrative R., ECF No 57; Def.-Intervenor Karna's Reply in Supp. of its Cross-Mot. for J. on the Administrative R., ECF No. 55. As noted previously, a hearing on the cross-motions were held on March 22, 2023. The competing motions are ready for disposition.

## STANDARDS FOR DECISION

Judgment on the administrative record, pursuant to RCFC 52.1, "is properly understood as intending to provide for an expedited trial on the record." *See Bannum, Inc.*, 404 F.3d at 1356. The rule requires the court "to make factual findings . . . from the record evidence as if it were conducting a trial on the record." *Id.* at 1357. "[T]he court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *Bae Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 225 (2022) (quoting *Jordan Pond Co. v. United States*, 115 Fed. Cl. 623, 630 (2014)).

Generally, in an action brought pursuant to Section 1491(b) of the Tucker Act, the court "review[s] "the agency's actions according to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706." *See Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019) (citing 28 U.S.C. § 1491(b)(4)). Under the APA, the court determines whether an agency decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When applying this standard, the court decides whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 (Fed. Cir. 2004)); *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 990 (Fed. Cir. 2018) (quoting *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009)). For the rational basis standard, the agency must have "provided a coherent and reasonable explanation of its exercise of discretion," and the challenger bears the burden of showing that there was no rational basis for the decision. *Dell Fed. Sys.*, 906 F.3d at 992 (quoting *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). This rational basis standard applies to an agency's decision to take corrective action. *Dell Fed. Sys.*, 906 F.3d at 991-92. Although the court's review is deferential, it is not "toothless." *See Tolliver Group, Inc. v. United States*, 151 Fed. Cl. 70, 109 (2020). For the violation of regulation or procedure standard, "the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa Construzioni Geom. Domenico Garufi v. United States ("Impresa")*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (quoting *Kentron Hawaii, Ltd. V. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)); *Latacore, Inc. v. United States Dep't of the Navy*, 19 F.3d 1346, 1356 (11th Cir. 1994)). To show prejudice, the challenger must show "that there was a 'substantial chance' it would have received the contract award but for the . . . errors in the bid process." *Bannum, Inc.*, 404 F.3d at

1358 (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)); *see Kiewit Infrastructure W. Co. v. United States*, 147 Fed. Cl. 700, 707 (2020) (requiring a showing of prejudice when challenging a cancellation decision).

When deciding whether to grant injunctive relief, the court "must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp.*, 554 F.3d at 1037.

## ANALYSIS

The parties disagree about whether CDC's decision to take corrective action by canceling the award to Cahaba and issuing a new solicitation had a rational basis and complied with the Federal Accounting Regulations ("FAR").

### A. *CDC's reconsideration memorandum is a new agency decision*

The parties disagree about whether CDC's reconsideration memorandum, which it filed after remand, is a new agency decision. Cahaba contends that CDC's reconsideration memorandum is not a new decision and therefore avers that CDC's reconsideration memorandum includes impermissible post-hoc justifications. Pl.'s Mot. at 14. Meanwhile, CDC contends that its reconsideration memorandum is a new decision and therefore is permitted to contain new rationales for corrective action. Def.'s Cross-Mot. at 11.

When a court finds that "the grounds for agency action are inadequate, 'a court may remand for the agency to do one of two things. First, the agency can offer a fuller explanation of the agency's reasoning at the time of the agency action.' If it chooses this route 'the agency may elaborate' on its initial reasons for taking the action, 'but may not provide new ones.' Alternatively, 'the agency can deal with the problem afresh' by taking *new* agency action. 'An agency taking this route is not limited to its prior reasons.'" *Biden v. Texas*, 142 S. Ct. at 2528, 2544 (2022) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. at 1891 (2020)) (internal citations omitted). This is permitted even if the agency determines to take the same corrective action that it initially took. *Biden v. Texas*, 142 S. Ct. at 2546-47. If an agency takes new agency action, it "'must comply with the procedural requirements for new agency action'–but the benefit is that the agency is 'not limited to its prior reasons' in justifying its decision." *Biden v. Texas*, 142 S. Ct. at 2546 (quoting *Regents*, 140 S. Ct. at 1908).

CDC's reconsideration memorandum is a new decision. Therefore, CDC was not limited to expanding its rationale at the time of its original decision and instead was permitted to offer new rationales for its decision to take corrective action. The memorandum states, "This [r]econsideration [m]emorandum is a new decision and supersedes the [a]gency's original decision in this matter." Recons. Mem. at 1. Although CDC's initial award and first decision to take corrective action were procedurally and substantively flawed, its new decision on remand, not its initial decision, provides the basis for analysis. *See Biden v. Texas*, 142 S. Ct. at 2544, 2548. For example, CDC's initial award to Cahaba resulted from the technical evaluation

9

panel's recommendation memorandum, but, although the panel's memorandum states that Cahaba's "approach is comprehensive, and clearly addresses all tasks and subtasks," AR 2776-77, the agency's best-value analysis was minimal, to be charitable. It included statements such as that Cahaba's price was "comparable to both historical costs and [an independent government cost estimate] for this requirement." *See* AR 2770, 2780. In addition, CDC's initial decision to take corrective action, which it notified GAO of 18 days after Karna filed the first protest, provided no reasoning for the agency's decision. AR 4489, 4491.

After considering offerors' protest grounds and soliciting and considering offerors' submissions during the remand, CDC announced that it decided to cancel its current award to Cahaba and issue a new solicitation in its reconsideration memorandum. *See* Recons. Mem at 1. In its new decision, CDC provided new rationales for taking corrective action. CDC reasoned that it would take corrective action because of the oral presentations and associated record, the potential application of unstated evaluation criteria, the agency's binary evaluation of offerors' past performance, the price realism analysis, and the professional compensation analysis. The agency had concerns that it could not defend against the protesters' allegations in a protest. *See id.* at 1-5.[9] Because CDC's reconsideration memorandum was a new agency action, CDC was permitted to provide new rationales for its decision to take corrective action. The decision and rationales provided in the reconsideration memorandum[, not the agency's original solicitation and decision to take corrective action,] provide the proper basis for the court's analysis.

### B. CDC's new decision to take corrective action had a rational basis and did not violate regulation or procedure

The parties disagree about whether CDC's decision to take corrective action, as relayed in its reconsideration memorandum, had a rational basis and whether it violated regulation or procedure. Cahaba avers that even if CDC's reconsideration memorandum is a new decision, it lacks a rational basis and violated regulation or procedure, Pl.'s Mot. at 18, 29, while CDC contends that the new decision has a rational basis, Def.'s Cross-Mot. at 15, and did not violate regulation or procedure, *see* Def.'s Reply at 13.

CDC avers that corrective action is warranted because of the oral presentations and associated record, the potential application of unstated evaluation criteria, the agency's binary evaluation of offerors' past performance, the price realism analysis, and the professional compensation analysis. The agency is concerned that it could not defend against these grounds in a protest. Recons. Mem. at 1-4. Cahaba argues that none of the reasons offered by CDC to take corrective action have a rational basis.

The rational basis test requires that an agency "provide[] a coherent and reasonable explanation of its exercise of discretion" to take corrective action and the challenger bears the

---

[9] The initial reconsideration memorandum that CDC filed on November 30, 2022 was not signed, *see* Recons. Mem., but on February 17, 2023 the agency filed a version that was signed by the contracting officer, Michael Crow. Signed Recons. Mem., ECF 51. Michael Crow was the author of the November reconsideration memorandum and was the contracting officer at the time of the decision. Def.'s Cross-Mot. at 11 n.2; *see* Hr'g Tr. 24:4-11 (March 22, 2023).

burden of showing that there was no rational basis for the decision. *Dell Fed. Sys.*, 906 F.3d at 992 (quoting *Banknote Corp.*, 365 F.3d at 1351). The court determines if the administrative record supports the agency's rationales; the court needs to find a reasoned basis for corrective action. *See Harmonia Holdings Grp., LLC v. United States*, 160 Fed. Cl. 674, 685-91 (2022); *Raytheon Co. v. United States*, 809 F.3d 590, 596-99 (Fed. Cir. 2015).

CDC's corrective action was reasonable because of its analyses of price realism and professional compensation. FAR 15.305 discusses an agency's obligation to conduct a cost or price evaluation and states that "[t]he contracting officer shall document [it]." 48 C.F.R. § 15.305. The record supports CDC's contention that "[b]ecause the level of pricing detail expected and anticipated by the [a]gency was not clearly stated in the [s]olicitation, . . . offerors that interpreted pricing proposal instructions to require less detail may have been prejudiced during the [a]gency's pricing evaluation." Recons. Mem. at 4. CDC emphasized that the per-member per-month template and solicitation's instructions regarding it and other pricing details "did not clearly communicate the [a]gency's pricing expectations and could have been interpreted differently by offerors." *Id.* at 4. Although offerors were asked to complete the per-member per-month template and to provide the cost/price for the fixed-price contract line-item numbers, *see* AR 118, 248, the solicitation did not expand on the level of detail that should be included and did not state that the template should include the detail required in the pricing proposal spreadsheet, *see* AR 118, 244, 248. The record also supports the agency's contention that this affected General Dynamics's evaluation, *see* AR 2779-80, 2787, Recons. Mem. at 4, despite Cahaba's contention that General Dynamics's score suffered from the information it submitted instead of a lack of clarity in the solicitation. *See* Pl.'s Mot. at 27-28. Karna may have suffered from the same shortcoming. *See* AR 2780. Because at least one offeror was improperly negatively affected by its lack of pricing detail, this could have affected the best-value determination and ultimate award. *See* Hr'g Tr. 21:5 to 22:12 (March 22, 2023). Corrective action is reasonable because of the solicitation's price realism analysis.

CDC's decision to take corrective action was also reasonable because of its flawed professional compensation analysis. Under FAR 52.222-46 the government must evaluate "a total compensation plan setting forth salaries and fringe benefits proposed for the professional employees who will work under the contract." 48 C.F.R. § 52.22-46(a). In its reconsideration memorandum, CDC states that the "[s]olicitation instructions did not clearly define what information offerors were required to submit with their pricing proposals per FAR 52.222-46, nor did the agency receive sufficient information from all offerors as part of their pricing proposal submissions to perform an adequate professional compensation analysis." Recons. Mem. at 4. Although Cahaba avers that "in response to debriefing questions, the CDC clearly indicated that it considered the requirements of FAR 52.222-46," Pl.'s Mot. at 28 (citing AR 3165),[10] the citation does not support that CDC had the necessary information from offerors to conduct the required evaluation or that the agency actually conducted it. In addition, this

---

[10] A response to a debriefing question states, "The considerations of FAR 52.222-46 Evaluation of Compensation for Professional Employees, which is incorporated by reference in the solicitation at page 86, were taken into account during the [g]overnment's pricing evaluation." AR 3165. This, however, is not supported by the record as a whole.

statement was made before CDC identified the professional-compensation analysis error in its reconsideration memorandum. CDC's corrective action was reasonable because of its flawed professional compensation analysis.[11]

### C. Prejudice to Cahaba

The parties disagree about whether Cahaba was prejudiced by CDC's decision to take corrective action, specifically to cancel the award and issue a new solicitation. Cahaba contends that it suffered prejudice because it was awarded the contract under the initial solicitation. Pl.'s Reply at 16-19. Defendant avers that Cahaba did not suffer prejudice. *See* Def.'s Reply at 15.

When alleging an agency's corrective action violated regulation or procedure, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Impresa*, 238 F.3d at 1333. To show prejudice, the challenger must show "that there was a 'substantial chance' it would have received the contract award but for the . . . errors in the bid process." *Bannum, Inc.*, 404 F.3d at 1358 (quoting *Info. Tech. & Applications Corp.*, 316 F.3d at 1319). Although Cahaba argues that it was prejudiced because it was awarded the contract under the initial solicitation which CDC decided to cancel, rather than amend, *see* Pl.'s Reply. at 17-18, CDC did not violate procedure or regulation. *See supra* at 12 n. 11. In addition, not only did CDC give rational reasons to take corrective action based on errors in the solicitation and award, *see supra* at 10-12, but also Cahaba will be able to make submissions to the new solicitation and be considered by the agency. *See* Hr. Tr. 48:7 to 49:9 (March 22, 2023).

### D. Scope of the corrective action

The parties disagree about the proper scope of CDC's corrective action. Cahaba avers that even if CDC was permitted to take corrective action, CDC did not provide a rational basis to cancel the award and issue a new solicitation. *See* Pl.'s Mot. at 28-31. CDC counters that its decision to cancel the award and issue a new solicitation that is open to both current offerors and new offerors is reasonable. *See* Def.'s Cross-Mot. at 24-25.

An agency's cancellation will be upheld when "the record discloses a reasonable motivation for cancellation." *Veterans Contracting Grp., Inc. v. United States*, 920 F.3d 801, 806 (Fed. Cir. 2019). The agency's corrective action only needs to have a rational basis and the Federal Circuit has rejected efforts to apply a "'narrow targeting' test to evaluate the appropriateness of a corrective action." *See Dell Fed. Sys.*, 906 F.3d at 991-92. The agency is

---

[11] CDC's decision to take corrective action did not violate regulation or procedure. *See mLINQS, LLC v. United States*, ___ Fed. Cl. ___, ___, 2023 WL 2366654, at *28-30 (March 6, 2023) (upholding a cancellation because the record provided a reasonable basis for it); *Harmonia Holdings Grp.*, 160 Fed. Cl. at 684-88 (reasons justifying the cancellation were grounded in the record). Cahaba contends that CDC's decision to take corrective action violated FAR 15.206 and FAR 15.305, Pl.'s Mot. at 29-31, but CDC did not cite to either provision to support its decision to take corrective action and FAR 15.305 permits an agency to "reject all proposals received in response to a solicitation[] if doing so is in the best interest of the [g]overnment." 48 C.F.R. § 15.505(b).

"not legally required to address every option [it could take for corrective action], but rather to provide a reasonable corrective action and adequately explain its reasoning for doing so." *Id.* at 998.  CDC's proposed corrective action is rationally related to the price realism and professional compensation defects–which encompass both unclear solicitation instructions and the agency's failure to complete the required professional compensation analysis–as it explains in its reconsideration memorandum.  *See* Recons. Mem.  In addition, CDC did consider other forms of corrective action, such as re-evaluating existing proposals, but determined that other forms of corrective action were insufficient because of the defects in the solicitation itself, for example.  *See* Def.'s Cross-Mot. at 25.

## CONCLUSION

For the reasons stated, the plaintiff's motion for judgment on the administrative record is DENIED and the defendant's motion for judgment on the administrative record is GRANTED pending CDC's cancelation of the award and solicitation.[12]  Defendant-intervenors' motions for judgment on the administrative record are also GRANTED.

For the reasons stated, the Clerk is directed to enter judgment for defendant and defendant-intervenors.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow  
Charles F. Lettow  
Senior Judge

---

[12] Because of the voluntary stay that is in place until April 14, 2023, Joint Status Report at 2, the solicitation is open.  *See Sys. Application & Techs., Inc. v. United States*, 691 F. 3d at 1383-84 (listing the requirements for ripeness and finding the Army's announcement of its decision to take corrective action paired with language that led to legal consequences was not moot).